LOUISA ULRICH vs. CHARLES ULRICH ET AL.

EQUITY.   No. 8005.

{ Decided November 12, 1883.
{ The CHIEF JUSTICE and Justices COX and JAMES sitting.

Plaintiff filed his bill for divorce and alimony, setting forth that the defend-
ant was the owner of a certain lot in Washington, and alleging that it was
all the properties he owned except a small amount of house furniture ; and
praying that this real estate be subjected to her claim for alimony.  Before
the filing of the bill the defendant owned two shares of stock in a building
association, upon which· the association had loaned him $214, taking
therefor a bond which stated the amount loaned to be $1,000.   This bond
was secured by a deed of trust upon the real estate in question.   After the
filing of the bill the defendant repaid this $214, but subsequently pur-
chased other shares upon which the association made a further loan or
advance, under the supposition that the bond and deed of trust first given
secured future advances, and that this last loan would be covered by
them.   Subsequently to this the court passed a decree granting $25 a
month alimony.

*Held*, 1st, That the recital in the bond that the loan was for $1,000, was
not binding, and that the court could look into the real fact of the case to
ascertain what amount was really loaned ; 2. That the bond had no refer-
ence on its face to any future transaction ; 3. That the second loan was
entirely independent of the first ; 4. That the plaintiff's suit was a *lis pen-
dens*, and charged all persons with notice that the plaintiff was seeking to
subject the property described to a decree for alimony ; that the defendant
having paid the first loan of $214, discharged the property from the lien of
the trust, and that the subsequent loan having been made *pendente lite*,
was postponed to the lien of the plaintiff for her alimony.   But as between
the association and the defendant the bond and deed of trust were security
for the subsequent loan.

STATEMENT OF THE CASE.

The original bill in this cause was filed January 19, 1882,
and the defendant Ulrich was summoned to answer the fol-
lowing day.   The bill was for divorce, the custody of the
five infant children, and alimony.   Paragraph four of the
bill averred: "That the defendant is the owner in fee of
the lot situate at the northeast corner of 8th and L streets,
in square 929, in said city of Washington; that the same is
improved, and rents at $25 per month, and is worth about
$2,500.   This property was earned by the joint labor of
both the complainant and defendant in the first years of

their married life." It further alleged that this was the only property owned by the defendant. The second prayer of the bill was: "That the court may restrain the defendant from selling or incumbering the said real estate until the further order of the court."

March 20, 1882, the court decreed that defendant pay to plaintiff alimony *pendente lite* at the rate of $25 per month, and the defendant be restrained from collecting the rents until further order.

June 15, 1882, a final decree was passed dissolving the bond of matrimony, giving the custody of all the children to the plaintiff, and fixing alimony at $25 per month, and authorizing and empowering the plaintiff to collect the rent of the premises in question, and restraining and enjoining the defendant "from collecting or interfering in any manner with said rents, or in any way disposing of said property until the further order of the court."

May 12, 1882, a supplemental bill was filed, making the Washington Building and Savings Association No. 4 a party. It averred that defendant Ulrich, on the 29th day of August, 1879, made his bond to the treasurer of said association in the sum of $1,000, and on the same day the defendant, Ulrich, and the plaintiff, his wife, executed an ordinary deed of trust, upon the property in question, to secure the performance of the conditions of the bond.

The bond was as follows:

"Washington Building and Savings Association No. 4.

"Know all men by these presents, that I, Chas. Otto Ulrich, of the city of Washington, in the District of Columbia, am held and firmly bound unto Lorenz Kissner, treasurer of the Washington Building and Savings Association No 4, of the city of Washington, in the just and full sum of one thousand dollars, current money of the United States, to be paid unto the said Lorenz Kissner, treasurer as aforesaid, or to his successor in office, for which payment, well and truly to be made in the manner following, I bind myself, my heirs, executors and administrators. Sealed with

my seal, and dated this twenty-ninth day of August, one thousand eight hundred and seventy-nine.

"Whereas, the said Chas. Otto Ulrich, a stockholder to the extent of five shares in the said association, has, by virtue of and in accordance with the provisions of the constitution of the said association, and the obligation attached thereto, received from the said association the sum of one thousand dollars.

"Now, if the said Chas. Otto Ulrich, or his heirs, executors or administrators, shall well and truly pay or cause to be paid unto the said Lorenz Kissner, treasurer as aforesaid, or to his successor in office, the sum of two dollars on each of his shares of stock held by him, on which money has been advanced to him, monthly and every month, commencing from the date hereof, and continue to pay the same on the second Monday of each and every month thereafter, and also all fines and forfeitures which may be imposed upon or incurred by the said Chas. Otto Ulrich by virtue of the provisions of the said constitution, until the close of the said association, or return of the money advanced to him, then this obligation to be void, or else to remain in full force and virtue in law.

"C. OTTO ULRICH."

The supplemental bill further averred that the debt under the above bond was paid off, with the exception of a few dollars at the time of the filing of the original bill, January 19, 1882, and that the purposes for which the bond and deed of trust were given, had been executed; but that, after the filing of the original bill, the association advanced to Ulrich about the sum of $750, and was seeking to hold the property responsible therefor under the bond and deed of trust. The supplemental bill concluded with prayers for an accounting and settlement, and for discovery, injunction, &c. The association answered through its secretary and treasurer. Whereupon, on November 20, 1882, the cause was, by order of the court, referred to the auditor to take the evidence, and report: First. "The amount of the in-

debtedness, if any, that was due from defendant Charles Otto Ulrich to the defendant building association at the time the original bill was filed, and secured by the deed of trust, mentioned in the supplemental bill, upon the real estate described in these proceedings." Secondly. "The amount the said building association advanced to defendant Charles Otto Ulrich after the filing of said original bill, and whether the same is secured by the said deed of trust as a lien upon said real estate." And, thirdly, "The amount of the debt due the said defendant building association by defendant Charles Otto Ulrich, and secured by the said deed of trust as a lien upon the said real estate described in the supplemental bill."

The auditor filed his report to the effect that there was due at the date of filing the original bill $55.36; that the amount advanced to Charles Otto Ulrich after the filing of the original bill was $556; and that the balance due at date of report was $447.90, which he reported as a lien on the property, secured by the bond and mortgage mentioned.

A verified transcript of the accounts, furnished by the secretary and filed in the cause, showed that on August 29, 1879, the association advanced to Ulrich on the bond $214. That this amount was reduced by sundry payments, until March 21, 1882, when Ulrich paid $160, which exceeded the amount found due by the auditor by $104.64, but on March 23, 1882, the association advanced $556, thereby bringing Ulrich again into its debt in the sum of $441.36, which, by the accumulation of interest, became $447.90.

January 6, 1883, the complainant filed the following exceptions to the auditor's report.   (1.) That the auditor erred in holding that the deed of trust was a security for future advances.   (2.) The auditor erred in not reporting the extinguishment of the debt due at that time by defendant Ulrich to the association, by the payment of $160, mentioned in Schedule "C," the same having been made March 21, 1882, as appears from the transcript filed in this cause of the accounts between defendant Ulrich and the association, at which time Ulrich was indebted to the association in the sum of $51.90, as per

Schedule "C." The said payment of $160 not only paid all the indebtedness then due under the bond and deed of trust, but brought the association in their accounts, indebted to defendant Ulrich in the sum of $108.10. By reason of this the auditor erred in not finding the deed of trust *functus officio*, the debt thereunder being fully paid. (3.) The auditor erred in treating the new loan of $556, made March 23, 1882, two days after the payment of the $160 mentioned, and the consequent extinguishment of all indebtedness on the part of Ulrich to the association, that was then due under the bond, and secured by the deed of trust, as a continuance of the original loan of $214. Although the bond recites an indebtedness of $1,000, the actual indebtedness was $214, and although the bond recites that Ulrich was the owner of five shares of stock, he was the actual owner of but two shares, and this indebtedness having been fully extinguished by the payment of the said sum of $160, March 21, 1882, the bond or obligation, by its very terms, became void; and, (4.) The auditor erred in holding the original bill not to be *lis pendens*, and in further holding that the supposed lien the association may have on said real estate, by the deed of trust to secure money advanced to Ulrich after the filing of the original bill, can be asserted thereunder so as to disturb the final decree of the court passed June 15, 1882.

The indebtedness now due to the association is for money wholly advanced to Ulrich after the filing of the original bill, and the security given upon the real estate is subordinate to the final decree of the court, which gives to the plaintiff the rents and income thereof, and restrains the defendant Ulrich from encumbering, &c., the same.

Upon the hearing, these exceptions were overruled, and the supplemental bill dismissed with costs, by decree of April 9, 1882, from which the plaintiff appealed.

J. G. BIGELOW for plaintiff.

Does the deed of trust in question purport to secure future advances? The answer is, that it does not. The deed of

trust is given to secure the faithful performance of the conditions of the bond, and contains the provision that in case of default in that respect, the trustees shall have the power to sell, &c. The right to sell under the deed of trust depends exclusively upon a breach of the conditions⌐ of the bond. The condition of the bond is that in case Ulrich shall pay two dollars on each share of the stock held by him, *on which money has been advanced,* per month, until the close of the association, or until he has repaid the money advanced to him, the bond is to be void. There is no provision in the bond or deed of trust, obligating the association to advance any future sum or sums to Ulrich. Nor is there any provision therein that the bond may be deemed to cover any future sums the association may advance.

The deed of trust and bond do not contain a single requisite to make them security for future advances. Jones on Mortgages, sections 365, 367.

If the condition of the bond required Ulrich to pay two dollars monthly on each share of stock owned by him, and on which money has been advanced, or that he shall hereafter own, and on which money shall be hereafter advanced, then the bond would fulfil the requirements of section 367, Jones on Mortgages, and advances to the extent of $1,000 could have been made by the association under the deed of trust.

The second question is: Was the original debt paid off before the second advance of $556? The record shows that it was. The original loan was on two shares of stock (all that Ulrich then owned) of $214, made August 29, 1879. This indebtedness was reduced by sundry payments to $51.90, as per Schedule "C," Auditor's Report, when, on March 21, 1882, Ulrich paid to the association $160. This payment not only extinguished all indebtedness under the bond and deed of trust, but actually brought the association in debt to Ulrich in the sum of $108. Now, the condition of the bond is, that in case of a "return of the money advanced to him," on the shares of stock held by him," then this obligation to be void. "There can be no controversy

about the fact of the return, by Ulrich, of all the money advanced to him by the association under this bond and deed of trust, on March 21, 1882. The bond thereby became void, and the deed of trust *functus officio.*

The third question is : " Can this bond and deed of trust be revived as against the plaintiff by the act of defendant, Ulrich, and the building association, whereby, on March 28, 1882, two days thereafter, the association advance to Ulrich the sum of $556 ? Barring the item of interest (which makes apparent discrepancies in small sums), this advance brings Ulrich again into debt to the association $556 − $108.10 = $447.90, which the auditor finds due and secured by the deed of trust and bond. There is no theory upon which this finding can be maintained, except of redelivery of these instruments.

The original debt had all been paid, and the bond by its very terms had become void, and the deed of trust *functus officio.* The only way in which they can again acquire validity is upon the theory they were redelivered by the husband, and pledged for security for this new loan, or for the balance of it after deducting the indebtedness of the association to Ulrich. Under the circumstances of this case, and considering the situation of the parties, no one will seriously maintain this could be done so as to disturb the final decree allowing alimony to the plaintiff out of the real estate in question. 2 Jones on Mortgages, sections 947 and 948.

The only remaining question is : Was the original bill a *lis pendens ?* The original bill was filed January 19, 1882, and subpœna to answer was served on the following day. It was for divorce a *vinculo matrimonii,* the custody of their five infant children, and alimony. We have only to consider it here as a suit for alimony, and to inquire whether the doctrine of *lis pendens* applies to this particular case.

No principle of the law is recognized in a greater multitude of cases than the rule of *lis pendens.* The reasons for it are given by Justice Story. 1 Story, sections 405 and 406.

The *lis pendens* begins with serving of the subpœna. 2 Jones on Mortgages, section 1411.

The doctrine of *lis pendens* is elaborately considered by Chancellor Kent in Murray *vs.* Ballon, 1 John. Ch., 566.

But no one denies the doctrine or principle of *lis pendens* generally. The question is: Does it apply to this suit for alimony? It was conceded by plaintiff's counsel in the court below, and it is conceded here, that *lis pendens* does not apply generally to suits for alimony; that is, it does not apply to such suits where the plaintiff seeks to have the estate generally of the defendant subjected to the claim for alimony. There could be no reason for the application of the doctrine of *lis pendens* in such a suit for alimony. But designedly the plaintiff's suit is distinguished from the ordinary suit for alimony, in this, that she seeks by her bill to subject this particular piece of property to her claim for alimony. No one can read the bill and mistake its object in this respect. The property is described with sufficient certainty to acquaint any one of its location and character. It is averred in the bill that it is the only property the defendant owns, out of which alimony can be paid. In the prayers it is prayed that the defendant be restrained and enjoined from encumbering, selling or conveying away the described property. The plaintiff prosecuted her suit diligently, and as soon as the rules of the court would permit, obtained, on March 30, 1882, the restraining order as prayed.

It was argued in the court below that these averments in the bill, and this prayer, distinguished this case from ordinary suits for alimony, in which the property generally of the defendant is sought to be subjected to the claim, and brought it under the application of the doctrine and principle of *lis pendens*, but no authority could be cited in support of the position. This precise question, however, has recently been before, and determined by the Supreme Court of North Carolina, in the case of Daniel *vs.* Hodges, 15 Reporter, 534. Justice Ashe delivered the following opinion: "The defendant contends that the conveyances from her husband, Joseph Hodges, to W. W. Hall, and from Hall to the plaintiff, having been made while her action for alimony was pending, and especially after the order of the Superior

Court, assigning her the lot in question, were brought within the principles involved in the law of *lis pendens.*

"The rule of *lis pendens* is a principle founded, not so much upon the doctrine of notice, as in the motives of public policy. Hence, it is held as a general principle, that every one is presumed to be attentive to what passes in the courts of justice in the State where he resides, and that he who purchases during the pendency of a suit, the property in litigation therein, is bound by the decree or judgment that may be rendered against a party to that action from whom he derives title; and this, whether he purchased for a valuable consideration and without any express or implied notice in point of fact. (1 Story on Eq. Jur., §§ 405, 406.) But in order to give effect to these principles, two things are said to be indispensable. First: That the litigation should be about some specific thing which must be necessarily affected by the termination of the suit; and secondly, that the specific property must be so pointed out by the proceedings as to warn the whole world that they meddle with it at their peril. Freeman on Judgments, 196; Greene *vs.* Slayter, 4 John. Ch., 38.

"Under the application of these principles it has been held, by an almost invariable uniformity in the decisions upon the subject, that the rule of *lis pendens* does not apply to proceedings for alimony, for the reason that such a suit is in *personam,* and does not apply to any specific part of the personal or real estate of the husband. The judgment obtained in such a proceeding, says Judge Story, constitutes a lien upon the defendant's property from the time of the docketing, but does not constitute a *lis pendens* any more than any other sufficient cause for action. 1 Story on Eq. Jur., § 196.

"In Almond *vs.* Almond, 4 Rand., 662, the same doctrine is announced. It is there held that the claim of the wife for alimony is a personal claim on the husband, and that she has no lien on any specific property without an agreement; and to the same effect is Brightman *vs.* Brightman, 1 R. J., 112. It must be admitted that these decisions are

supported by sound reason and good policy, for as the prayer of the petition for alimony, according to the formula, is to have such reasonable subsistence secured to her out of the estate of her husband as may be deemed just and proper by the court, the application of the rule of *lis pendens*, in such a case, would lock up the entire estate of the defendant, for the alimony would attach to every part of the real and personal property the husband had at the time of filing the petition. Such, we understand, is the generally received doctrine in regard to the exclusion of the application of *lis pendens* in proceedings for alimony.

"But the particular circumstances of the case before us, in our opinion, constitute an exceptional case. While the prayer of the petition for alimony is in the usual form, it is stated in the petition that the lot in question was the only property in the State owned by the husband, and was the only property out of which alimony could be granted, and it was specifically described with such particularity that every person reading the petition could learn thereby what property it was she sought to have made subservient to her claim. And, although the prayer of her petition was in the usual general form, it was as evident that she was seeking to subject the lot in question to her claim for alimony, as if she had specially prayed that it might be assigned to her."

It will be readily seen that this case meets all the necessities of the one under consideration with respect to the question of the application of the rule of *lis pendens*. Indeed, so far as the question of the application of this rule is concerned, the facts and circumstances of the two cases are strikingly alike. The very identical grounds on which Justice Ashe holds the rule of *lis pendens* applicable to this North Carolina case, exist in the present case in their entirity.

It is submitted that the law as laid down by the Supreme Court of North Carolina is sound, and is conclusive of the case under consideration.

JOHN E. NORRIS and CHAS. A. WALTER for defendants.

Mr. Justice JAMES delivered the opinion of the court.

On the 29th day of August, 1879, the defendant Charles Ulrich took steps for effecting a loan from the Washington Building Association. The papers were in the usual form, that is to say, embraced a bond which was secured by a deed of trust. The bond was in the following words:

"Washington Building and Savings Association No. 4.

"Know all men by these presents, that I, Chas. Otto Ulrich, of the city of Washington, in the District of Columbia, am held and firmly bound unto Lorenz Kissner, treasurer of the Washington Building and Savings Association No 4, of the city of Washington, in the just and full sum of one thousand dollars, current money of the United States, to be paid unto the said Lorenz Kissner, treasurer as aforesaid, or to his successor in office, for which payment, well and truly to be made in the manner following, I bind myself, my heirs, executors and administrators. Sealed with my seal, and dated this twenty-ninth day of August, one thousand eight hundred and seventy-nine.

"Whereas, the said Chas. Otto Ulrich, a stockholder to the extent of five shares in the said association, has, by virtue of and in accordance with the provisions of the constitution of the said association, and the obligation attached thereto, received from the said association the sum of one thousand dollars.

"Now, if the said Chas. Otto Ulrich, or his heirs, executors or administrators, shall well and truly pay or cause to be paid unto the said Lorenz Kissner, treasurer as aforesaid, or to his successor in office, the sum of two dollars on each of his shares of stock held by him, on which money has been advanced to him, monthly and every month, commencing from the date hereof, and continue to pay the same on the second Monday of each and every month thereafter, and also all fines and forfeitures which may be imposed upon or incurred by the said Chas. Otto Ulrich by virtue of the provisions of the said constitution, until the close of the said association, or return of the money advanced to him,

then this obligation to be void, or else to remain in full force and virtue in law.

"C. OTTO ULRICH."

The condition of this bond, which, as has been stated, was secured by a deed of trust, was to pay two dollars a month on each share of stock held by Ulrich. Afterwards, on the 19th of January, 1882, the plaintiff, Louisa Ulrich, filed her petition for divorce, setting forth that the defendant, Charles Ulrich, was the owner of a certain lot in Washington, and alleging that it was all the property he owned, except a small amount of household furniture, and asking, first, a divorce and then alimony, praying meantime for alimony *pendente lite*.

It appears that before the filing of the bill the building association had, as a matter of fact, loaned to Charles Ulrich not $214, but $1,000, and that he was, as a matter of fact, the owner of two shares, not of five, and that the $214 were loaned upon these two shares. After the filing of the petition for divorce and for alimony, setting forth that this was the only real estate that the defendant possessed, Ulrich purchased other shares, having first surrendered one of his two, and then he afterwards purchased four other shares, and upon these shares the association made another advance to him.

The questions are, first, whether the lending of the $214 on the two shares and the subsequent advances on the four shares were one transaction, and intended to be so by the instruments executed. And, next, if they were separate and independent transactions, whether the petition for divorce and alimony setting forth that this was the only property which the defendant owned, was such a *lis pendens* as to charge all persons purchasing this real estate, or loaning money upon it, with notice that the complainant was seeking to subject it to her alimony.

We are of opinion that the two transactions were entirely independent. By the constitution of this association all loans were made upon the stock and secured by real

estate.    The repayment of the loan was regulated by the amount of stock which the stockholder owned.    If this repayment was to be accomplished in the manner usual with these associations, namely, by the payment of so much each month upon the stock, then the measure of payment was ascertained and the fact established that the loan had distinct relation to the stock that the party owned at the time.    So this first loan of $214, payable by paying monthly two dollars on each of two shares of stock, had distinct reference to the two shares which Ulrich owned.    He did not, at that time, have more than these two shares.    So that if he should wish to borrow more money he would have to acquire other shares, thus making any further loan, a loan made in respect of those shares yet to be acquired.

It was claimed, however, that this bond was prospective ; that whatever loans the association might yet make were to be covered by it.    There is no doubt that the bonds given to these building associations are usually framed in that way, but this bond is not.    It sets forth an existing debt, but misstates the amount, so that on the face of the bond it would appear as if Ulrich had received the thousand dollars.    The recitals in these bonds, however, are not binding. We can look into the real facts of the case, as we have done, and we find that Ulrich had not received any such sum, and that the bond has no reference on its face to any future transaction.

If, then, this petition for the allowance of alimony can be treated as a suit relating to this property, it would follow that the building association had no right to enter into new and independent transactions, and make a new loan upon the security of it in disregard of the pending suit brought to subject that property to the payment of alimony.    It is claimed that a suit for alimony, although it described this property, was only a suit *in personam.*    If it were so, of course the doctrine of *lis pendens* would be inapplicable.

The case of Daniel *vs.* Hodges, 15 Reporter, 534, decided by the Supreme Court of North Carolina, was a decision upon a similar question.    In that case the petitioner set forth that

the property described was the only property that the defendant possessed, and the court held that it was necessarily a suit to subject that property to her alimony, and might be pleaded as *lis pendens,* so that any transactions by strangers relating to that property were made with full notice of the suit pending in relation to it, and must be postponed to the rights acquired thereunder.

We have carefully considered this North Carolina case, because we understand it to have been the only one in point which counsel were able to find, and we are of opinion that the reasons applicable to that case as a *lis pendens* apply here fully. The complainant's suit, besides being a suit for divorce, was a suit to subject this very property to her alimony. It could not have referred to any other property, because she stated that this was all the property the defendant had. We must, therefore, regard this suit as *lis pendens* in respect of this property.

The case then is, that after $214 had been loaned to the defendant Ulrich upon this property, the complainant brought a suit for divorce and alimony, and prayed that this property should be subjected to that claim. With notice of that suit, the building association proceeded to lend Ulrich more money, upon the security of the property. Two days before the new loan was made, the association received from Ulrich $160, while there was due to it only $52 and some cents of the original loan. So that before the association made the new loan, the old one had been extinguished, and an over payment of $108 made.

So far, therefore, as the complainant was concerned, this bond which gave a prior lien for an existing debt, and only for an existing debt, had performed its function, and any decree that might afterwards be made, allowing her alimony, would give her a first lien upon the property. There was such a decree fixing her alimony at $25 a month. The bond and the deed of trust no longer interposed any lien ahead of her. So that so far as she was concerned (but only so far as she was concerned), they were satisfied.

But as between Ulrich and the building association, we

are of opinion that although the thousand dollars had not yet been advanced, but only $214 of it, yet if it was understood that the $214 was a part of the thousand dollars loan, and Ulrich accepted it as a part, the whole loan would stand secured by this bond and the deed of trust, so far as he was competent to make it, and continued to support a lien on this property as against him. The result is that the complainant has a prior lien for her alimony, and after that comes the lien of the building association. The alimony is itself subject to the control of the court, to be reduced and possibly increased. Her lien, therefore, is for her alimony —not for $25 a month—but for her alimony, which is *now* $25 a month, and the lien of the association on this property for their loan, is postponed to this claim.

The decree of the court below is reversed, and counsel will prepare a decree in accordance with this opinion.*

*ULRICH *vs.* ULRICH.—The following was the decree of the General Term in this case in accordance with the above opinion ;

This cause came on to be heard on the record and proofs, in the General Term, on plaintiff's appeal from decree of the Special Term, and was argued by counsel. Whereupon, upon due consideration thereof, it is this 15th day of November, A. D. 1883, adjudged. ordered and decreed as follows :

1st. That the decree of the Special Term of April 9, 1883, affirming the auditor's report and dismissing the supplemental bill with costs, be and the same is hereby reversed.

2d. That the bond and deed of trust dated August 29, 1879, mentioned and set forth in the supplemental bill, do not constitute security for future advances ; and the original indebtedness of $214 thereunder of defendant Ulrich to the Building Association was fully paid and diicharged as to the plaintiff March 21, 1882.

3d. That the original bill for divorce and alimony filed January 19, 1882, was a *lis pendens* with reference to the particular piece of real estate described in the pleadings, and the final decree of the Special Term of June 15, 1882, subjecting the same to plaintiff's claim for alimony, constitutes a lien thereon in behalf of the plaintiff paramount to the claim, under said bond and deed of trust, of the building association for money advanced to Ulrich, March 22, 1882, after said bill was filed and service of subpoena. And the provisions of said final decree of June 15, 1882, are hereby continued in force until the further order of the court.

4th. That defendant, The Washington Building and Savings Association No. 4 be and the same hereby is restrained and enjoined from selling or attempting to sell the said described real estate and premises, under the said bond and deed of trust until the further order of the court.

And it is further ordered, adjudged and decreed that the costs to be taxed by the clerk, arising out of the supplemental bill, be and the same hereby are adjudged against defendants, Charles Otto Ulrich and the said Building and Savings Association, and that the plaintiff have execution thereof.